2022 IL App (2d) 191093-U
No. 2-19-1093
Order filed March 11, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1665 |
| WILLIAM INGRAM, | ) ) | Honorable Charles E. Peterson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant failed to develop on appeal his contention that the trial court denied him his constitutional right to the counsel of his choice when the court told newly retained defense counsel that the court would not permit postponement of the trial beyond a certain period, leading counsel to withdraw out of concern that he could not prepare for trial on time.

¶ 2    Defendant, William Ingram, appeals from his conviction of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2014)).  He contends that the trial court deprived him of his constitutional right to the counsel of his choice when, on January 10, 2019, the court told his newly retained counsel that it intended to hold firm to a trial date no later than June 2019 and, several days later, counsel

withdrew, citing his discomfort with the time he would have to prepare for trial. Defendant implies that the trial court's comments to counsel about the timing of the trial were a constructive denial of a motion for substitution of counsel or constructive denial of a motion for a continuance. Proceeding on that premise, defendant discusses the standards for reviewing denials of substitutions or continuances. However, he fails to address how those standards might be applied where, as here, counsel was not barred from appearing for defendant and did not ask for a continuance of the trial date. Thus, defendant fails to establish how the trial court's comments constituted error. We, therefore, hold that defendant has not offered a reasoned argument on the central issue and so has not met his burden of persuasion on appeal. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On October 17, 2015, the State filed a complaint charging defendant with the April 30, 2015, first-degree murder of Devonte Turner (720 ILCS 5/9-1 (West 2014)). On December 4, 2015, Bart Beals entered his appearance as defendant's retained counsel. On April 5, 2016, the court set a trial date of September 6, 2016. On August 31, 2016, the State changed its election so that it would try defendant first in case No. 14-CF-1094, a drug case. The court thus vacated all dates in this case. Beals represented defendant at trial in case No. 14-CF-1094. On May 1, 2018, the court set defendant's jury trial in this case for May 21, 2018.

¶ 5       On May 21, 2018, the court postponed the trial to August 6, 2018, because Beals had a medical emergency. On May 25, 2018, defendant told the court that he wanted to hire a different attorney. The State asked the court to warn defendant that the State would not cooperate with the defense in seeking future continuances. The court declined to give a prospective ruling on a potential motion to continue the trial date of August 6, 2018. However, the court admonished defendant that the State was planning on a trial date of August 6, 2018. The court also asked

defendant if he understood that, if he retained a new attorney and the court held to the trial date of August 6, 2018, the attorney would have only two months to prepare for trial. Defendant confirmed that he understood and that he still wished to discharge Beals. The court then allowed Beals to make an oral motion to withdraw, which the court granted.

¶ 6 Defendant then attempted to hire new counsel. On June 21, 2018, the court appointed a public defender for defendant, as his efforts to retain counsel were unsuccessful. The public defender appeared for defendant on June 28, 2018. On its own motion, the court vacated the August 6, 2018, trial date because it did not allow the public defender sufficient time to prepare. The court advised defendant that, because the public defender was about to start her review of an extensive record, he should promptly retain private counsel if that was his intent. The court admonished defendant that, if he again attempted to change counsel near the time of trial, the court might deny a motion to substitute counsel.

¶ 7 On January 3, 2019, Dustin E. Smith filed an appearance on behalf of defendant. He appeared in court on January 10, 2019. The State commented that it understood the trial court's prior remarks to mean that defendant "could get a private attorney but that we were going to be setting it for trial and that the [new attorney] would have to be answering ready for trial." The following colloquy ensued, in which the trial court recounted the history of the case:

"THE COURT: So, Mr. Smith, and you may laugh, but let me tell you ***. When I saw, in reviewing the court file, that you were coming in today, the very first thing that went through my mind was how difficult this was going to be on you as the attorney. We had this case set for trial. *** [T]he jury was coming in, and the attorney ended up calling in and saying that he was in the hospital and he couldn't be here. The case has been through

multiple attorneys, and at this point in time, the victim and the victim's representative has [*sic*] been in court on multiple dates.

I have been very candid with [defendant] throughout the entire process to indicate to him, as attorneys switched and as he fired his attorney who was ready for trial, that ultimately, as the Judge in the court system, I have to balance his right to a trial with the victim's right and the court's requirement to make sure that not only does justice—not only is justice done in the courtroom for all sides but that it's done in an efficient manner.

So you are in a very difficult situation in that I am—you're here in front of me, and I understand and anticipate without you saying a word—Judge, it's a murder case. Judge, my client's liberty is at stake. Judge, I have just been tendered a thousand police reports. There's no way I can be ready for trial.

With that being said, I'm going to set the case down for trial. I will work with you to give you a longer date, possibly into May. I will work with you to set every type of status date that you request. If you have hearings that you wish to set, I will set those hearing dates between now and that trial date, but I have been very clear with [defendant] about the choices that he is making, and I am going to follow through on what I have indicated.

\*\*\*

MR. SMITH: Thank you, Judge. \*\*\* I was unaware of all of this. \*\*\* I am absolutely not comfortable stepping into the situation then. \*\*\* Judge, I have no reaction other than to say that I'm seeking leave to withdraw my appearance. Judge, I can't prepare this case in that amount of time.

MR. SAMS [ASSISTANT STATE'S ATTORNEY]: *** I have no problem with June. I don't know whether that extra month helps counsel at all or not.

\* \* \*

MR. SMITH: Judge, in looking at the 1,200 pages of discovery and 50—some disks, I can't stand here and tell the Court I'm going to be ready to try this case in June." Smith accepted the trial court's offer to allow him time to think about taking the case. The court continued the matter to January 28, 2019, for status."

¶ 8 On January 28, 2019, Smith confirmed that he intended to withdraw, prompting the following exchange:

"THE COURT: *** I'd like to keep you in the case, but I would like to have a certainty of a trial date ***; when would you be able to do what you need to do and set it down?

MR. SMITH: You know, just given the amount of the Discovery, I don't even know that I can answer that. I honestly was under the impression that we probably had a year to move through this and I know that's not what the Court is looking at ***, and *** I'm not comfortable working on that kind of timeline for a work period, so I think at this point in time, the best the thing *** would be just withdraw, Judge.

\* \* \*

THE COURT: ***

Mr. Sams, I'm just going to ask you [as the prosecutor] if you would like to weigh in ***.

MR. SAMS: *** I understand Counsel Smith's reluctance to try this case between now and June, as a Defense Attorney I don't think that I would be able to do that either *** however, Judge, a year is—is just way too long ***. ***

\* \* \*

THE COURT: *** [When the public defender] stepped up and I had indicated to her the expedited time frame that we were going to be on *** and then right when we got to the eve of setting the case down is when you entered your Appearance; *** so if I allow you to withdraw, based upon your request, to withdraw—

MR. SMITH: Yes, to be clear, Judge, that is my request, yes.

THE COURT: *** [T]hen I would be re-appointing [the public defender.]

¶ 9       After allowing Smith to withdraw and reappointing the public defender, the trial court set February 1, 2019, as a status date for setting a new trial date. On February 1, 2019, the court set the final pretrial conference for September 5, 2019, and trial for September 9, 2019. The trial started as scheduled on September 9, 2019. The jury found defendant guilty of murder and made the finding that he had, in killing Turner, personally discharged a firearm.

¶ 10      Defendant moved for a new trial, arguing primarily that the court had deprived defendant of his right to counsel when it failed to give Smith enough time to prepare for trial, thus forcing him to withdraw. The court denied the motion.

¶ 11      The court sentenced defendant to 55 years' imprisonment. Defendant timely appealed.

¶ 12                                   II. ANALYSIS

¶ 13      On appeal, defendant argues that the court's treatment of Smith deprived defendant of his right to the counsel of his choice as guaranteed by the United States and Illinois Constitutions. See U.S. Const. amend. VI; Ill. Const. 1970, art. I, § 8.; see also *United States v. Gonzalez-Lopez*, 548

U.S. 140, 144 (2006) (the sixth amendment right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him"). He notes that deprivation of the right to counsel is not subject to harmless-error review. See *Gonzalez-Lopez*, 548 U.S. at 144. He further discusses the standards under which we review the denial of a motion to substitute counsel or a motion to continue the trial. Defendant appears to reason that the court's treatment of Smith was the equivalent of refusing to allow Smith to appear for defendant or denying a motion by Smith to continue the trial. However, defendant does not explain how we are to apply the standards for denials of substitutions or continuances to this case, where Smith was allowed to appear as counsel and did not ask for a continuance. Defendant has failed to provide a cohesive analysis of the claimed error and thus failed to meet his burden of persuasion.

¶ 14    Defendant, as the appellant, has the burden on appeal to affirmatively show error. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 48. He cannot expect the reviewing court to supply the necessary analysis. We often state that "[t]his court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and it is not a repository into which an appellant may foist the burden of argument and research." (Internal quotation marks and citation omitted.) *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 170. Often, when we invoke this principle, the appellant has wholly neglected an issue. However, it applies equally to less blatant failures that nevertheless would require the court to provide the analysis necessary to decide the issue.

¶ 15    If we were to address defendant's claim on its merits, we would have to decide—without the aid of briefing by defendant—when a trial court's treatment of counsel can be deemed the functional equivalent of refusing to let counsel appear or declining to give counsel a continuance. We could not provide such an analysis without becoming defendant's advocate, which is not our

proper role. As cases such as *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002) state, reviewing courts should refrain from addressing unbriefed issues when doing so "would have the effect of transforming [the] court's role from that of jurist to advocate." The same principle applies when an appellant, despite briefing an issue, has failed to supply the necessary analysis. As the *Rodriguez* court pointed out, when a reviewing court makes an argument on an appellant's behalf, it must also guess how the appellee would have responded, with results that are likely to be unjust. *Rodriguez*, 336 Ill. App. 3d at 14. We would be in that position were we to address the merits here. As defendant has not met his burden to affirmatively show error, we affirm.

¶ 16                                III. CONCLUSION

¶ 17    For the reason stated, we affirm the judgment of the circuit court of Kane County.

¶ 18    Affirmed.